**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK, by and through
Joseph H. Boardman, as Commissioner
of the New York State Department of
Transportation, and THE NEW YORK
STATE DEPARTMENT OF TRANSPORTATION,
                                    Plaintiff


               - v -                                1:04-CV-0962
                                                    (DNH/RFT)

NATIONAL RAILROAD PASSENGER
CORPORATION, doing business as AMTRAK,
                                    Defendant.

_____

**APPEARANCES:**                        **OF COUNSEL:**

HON. ANDREW CUOMO                        EDWARD M. SCHER, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for the Plaintiff
The Capitol
Albany, New York 12224


ARENT FOX PLLC                           RICHARD J. WEBBER, ESQ.
Attorney for Defendant Amtrak            TIMOTHY F. BROWN, ESQ.
1050 Connecticut Avenue N.W.
Washington, D.C. 20036-5339


HON. ANDREW CUOMO                        MICHAEL R. KLEKMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Third-Party Offfice of the State
Comptroller, Joan Sullivan and Thomas Sanzillo,
120 Broadway
New York, New York 10271-0332



**RANDOLPH F. TREECE**
**United States Magistrate Judge**


**MEMORANDUM-DECISION AND ORDER**

1

After more than three years of litigation, pretrial litigation in this case is in its final stages and the parties are preparing for a final disposition of the issues. What remains in terms of discovery is expert disclosure and the resolution of third-party subpoenas. Defendant Amtrak now asks this Court to recuse itself in deciding issues pertaining to the third-party subpoenas seeking depositions of Alan Hevesi, former Comptroller for the State of New York, Thomas Sanzillo, First Deputy Comptroller for the Office of the State Comptroller ("OSC"), and Joan Sullivan, Assistant Comptroller. Amtrak's Motion to Recuse was filed simultaneously with OSC's Motion to Quash Amtrak's Subpoenas. Dkt. No. 52, Def.'s Mot. to Recuse, dated Jan. 10, 2007; Dkt. No. 50, OSC's Mot. to Quash Subpoena, dated Jan. 10, 2007. This Order addresses solely the Motion to Recuse. On January 23, 2007, third-party OSC filed a Memorandum of Law in opposition to Amtrak's Recusal Motion, and in turn, Amtrak filed a Reply Memorandum of Law. Dkt. No. 59, OSC.'s Opp. to Mot., dated Jan. 23, 2007; Dkt. No. 70, Def.'s Reply Mem. of Law. In reviewing the basis for Amtrak's Motion to Recuse, we **deny** such Motion simply because no reasonable person knowing all of the facts would conclude that this Judge's impartiality could be reasonably questioned in rendering a decision and order on the Motion to Quash. Moreover, the Court will clarify the record to dispel that any preconceived, prejudicial notions of law or fact played any role in any previous rulings, or would even surface in deciding the Motion to Quash, or that Amtrak's grandiloquent ruminations of this Court's partiality toward OSC have any foundation whatsoever.[1]

## I. ISSUES

---

[1] Notwithstanding repeated requests by the parties, approximately twenty days prior to the expiration of factual discovery, Amtrak unexpectedly served a Subpoena Duces Tecum upon OSC seeking reams of documents. Plaintiff and Third-Party OSC sought immediate court intervention. Dkt. No. 56. A telephone conference was convened and during the course of the conference a compromise was struck, now an Order, that the enforcement of the Subpoena and service of objections thereto would be stayed pending a determination on the Plaintiff's Motion to Quash. Dkt. No. 65, Order, dated Jan. 23, 2007.

The facts and procedural history of this action are well known to the parties, but to the extent further familiarity is required, those facts are fully stated in the Court's January 9, 2006 Order, which denied Amtrak's Application to Compel Disclosure of OSC's Records by a Rule 34 Demand for Production.  Dkt. No 29, Order, dated Jan. 9, 2006; *also reported as New York ex. rel. Boardman v. National R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006).  Because Amtrak's recitation of the facts in support of its Motion is riddled with inaccuracies and unfounded innuendos, in order to lay bare the actual facts and law encompassing the January 9, 2006 Order, a reiteration of the record is warranted.  *In re Drexel Brunham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1998) (cited in *United States v. Muyet*, 994 F. Supp. 550, 554 (S.D.N.Y. Mar. 4, 1998) ("[I]n reviewing a recusal motion, a court must proceed by 'examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge.'")).

A.  The Law

Amtrak's Motion to Recuse is purportedly premised upon both 28 U.S.C. § 455(a) and (b)(1). Succinctly, those two subsections read in tandem state "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned [and] [h]e shall also disqualify himself in the following circumstance [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" *Id*.

In cases where a judge's impartiality might reasonably be questioned, the issue for consideration is not whether the judge is in fact subjectively impartial, but whether the objective facts suggest impartiality.  *See Liteky v. United States*, 510 U.S. 540, 548 (1994).  The ultimate inquiry is whether "a reasonable person, knowing all the facts, [would] conclude that the trial

judge's impartiality could reasonably be questioned." *Hughes v. City of Albany*, 33 F. Supp. 2d 152, 153 (N.D.N.Y.) (Kahn, J.), *aff'd*, 189 F.3d 461 (2d Cir. 1999) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).   The Second Circuit, as well as the statute's legislative history, instruct that this compulsory inquiry should be utilized as "an objective standard designed to promote public confidence in the impartiality of the judicial process." *United States v. Lovaglia*, 954 F.2d at 814 (citing H.R. Rep. No. 1453, 93d Cong. 2d Sess., reprinted in 1974 U.S.C.C.A.N. 6351, 6355).   Stated another way, the inquiry is "would an objective disinterested observer fully informed of the underlying facts, entertain **significant** doubt that justice would be done absent recusal." *Id*. at 815 (citing *Deluca v. Long Island Lighting Co., Inc*, 862 F.2d 427, 428-29 (2d Cir. 1988)) (emphasis added).   There must be an objective basis beyond mere claims of partiality being promoted, promulgated in motions, or  publicized elsewhere. *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001); *see also Ocasio v. Fashion Inst. of Tech*., 9 Fed. Appx. 66, 68 (2d Cir. 2001) (unpublished opinion).   Such recusal must go beyond the pale call for such action and must "display a deep-seated favoritism or antagonism that would make fair judgment impossible" or may be significantly derived from or a reliance upon an extrajudicial source. *Liteky v. United State*s, 510 U.S. at 555; *LoCascio v. United States*, 473 F.3d 493, 496 (2d Cir. 2007) (resolving that the standard is not guided by "what a straw poll of the only partly informed man-in-the-street would show" but rather a reasonable person knowing and understanding all of the relevant facts); *United States v. Toohey*, 448 F.3d 542, 546 (2d Cir. 2006) (reassignment is mandated where unambiguous bias and its improper influence exists).

In granting or denying a recusal motion, the Second Circuit has confided primary discretion with broad latitude to the trial court in reviewing such applications, subject only to the appellate

court's review standard review of abuse of discretion.  *United States v. Muyet*, 994 F. Supp. at 554

(citing *Apple v. Jewish Hosp. and Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1993) & *United States v.*

*Lovaglia*, 954 F.2d at 815).  Moreover,

> [t]he judge presiding over a case is in the best position to appreciate the implications
> of those matters alleged in a recusal motion.  In deciding whether to recuse himself,
> the trial judge must carefully weigh the policy of promoting public confidence in the
> judiciary against the possibility that those questioning his impartiality might be
> seeking to avoid the adverse consequences of his presiding over their case.  Litigants
> are entitled to an unbiased judge, not to a judge of their choosing.

*In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312; *United States v. Lovaglia*, 954 F.2d at 815

(noting that recusal motions are committed to the sound discretion of the trial court).

To be clear, a judge should not refer a recusal motion to another judge but rather should exercise

its "affirmative duty to inquire into the legal sufficiency" of said motion and determine if there is

a factual basis to support the charge of a "bent of mind that may prevent or impede impartiality of

judgment." *LoCascio v. United States*, 473 F.3d at 498 (quoting, *inter alia*, *Wolfson v. Palmieri*, 396

F.2d 121, 124 (2d Cir. 1968)).  Inasmuch as recusal applications are frequently employed, both the

United States Supreme Court and  the Second Circuit, evincing broad tenets as opposed to bright

line rules, have provided illumination and illustrations to guide the trial court in weighing all of

these factors.

For example, if a judge expresses "a personal bias concerning the outcome of the case at

issue," "has a direct personal or fiduciary interest in the outcome," or "has had contemporaneous

extrajudicial contact with a party or close relative of a party who has personal knowledge of

outcome-determinative facts," recusal is warranted.  *United States v. Lovaglia*, 954 F.2d at 815

(citations omitted).  Conversely, if that interest is "remote, contingent, indirect, [or] speculative,"

disqualification is not required.  *Id.* (citing *In re Drexel Burnham Lambert Inc.*, 867 F.2d at 1313).

Or, "[a] judge's prior representation of one of the parties in a proceeding . . . does not automatically

warrant disqualification." *Id.* (citing *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953 (2d Cir.), *cert. denied*, 439 U.S. 1072 (1979)).   Furthermore, a trial judge is not obligated to disqualify himself if some part of the relevant events of a case may have occurred while the judge served in an official capacity relatively related to those facts but departed from that office before an investigation of the facts ensued.   *United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996). Courts, much as Congress has promulgated, should default to a "personal-participation rule" for prior governmental employment and "draw the recusal line for prior government employment at participation in the proceeding or expression of an opinion concerning the merits of the particular case in controversy." *Baker & Hostetler LLP v. United States Dep't of Comm.*, 471 F.3d 1355, 1358 (D.C. Cir. 2006); *see also* 28 U.S.C. § 455(b)(3).   With respect to a claim of personal bias or prejudice, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," unless they reveal such a high degree of "favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. at 555 (citations omitted).[2]   Moreover, it is well established that it is presumptively not improper for a court to preside over successive matters involving the same parties. *Id*. at 551.[3]

---

[2]   The United States Supreme Court reiterated this point by stating that the bias and partiality must be "deep-seated and unequivoca[ly] antagonisti[c]." *Liteky v. United States*, 510 U.S. at 556.   The Supreme Court also observed that absent extrajudicial source, judicial rulings alone may be proper grounds for appeal but not for recusal. *Id*. at 555.   Furthermore, opinions formed based upon facts in current and prior proceedings or judicial remarks that are critical or even hostile "do not support a bias or partiality challenge." *Id*.

[3]   There are numerous instances where recusal was found not warranted by the Second Circuit.   Listed here, in addition to those cases cited above, are a few cases exemplifying that the trial court did not abuse its discretion in denying the motion to recuse: Judicial remarks made during the course of a trial that are critical, are expressions of impatience, annoyance, dissatisfaction, and even anger do not constitute a basis for recusal. *Liteky v. United States*, 510 U.S. at 556-57.   A judge who authorized the wiretap of defendant's telephone was not obligated to recuse himself on a subsequent motion to exclude evidence obtained from wiretap. *United States v. Girodano*, 442 F.3d 30 (2d Cir. 2006) and *United States v. Diaz*, 176 F.3d 52, 112 (2d Cir. 1999).   Having personal knowledge of facts gleaned from a settlement conference was insufficient to warrant

The Supreme Court further recognized that extrajudicial sources, which are "pejoratively" biased or prejudicial, are applicable to § 455(a).  One would not disagree with the acknowledgment but that does not necessarily conclude that all extrajudicial sources are deprecatory or pejoratively biased or constitute a basis for recusal.  In making this point clear, and eschewing a bright line rule, the Supreme Court in addressing the expanse of the extrajudicial source doctrine stated that

> [a]s we have described it, however, there is not much doctrine to the doctrine.  The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice.  Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice.  Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor,* than of an "extrajudicial source" *doctrine,* in recusal jurisprudence.

*Liteky v. United States*, 510 U.S. at 554-55 (quotations and emphasis in original); *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 644 (2d Cir. 1995) (noting extrajudicial source as a significant factor rather than a significant doctrine).

However, the most salient advice propagated by the appellate courts is for the trial court to review warily such motions of recusal.  *United States v. Lovaglia*, 954 F.2d at 815 ("[J]udges must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequence of [the judge's] expected adverse decision.") (quotation and alteration in original).  "A judge is as much obliged not to recuse himself when it is not called for as he is obliged

---

recusal.  *Omega Eng'r Inc. v. Omega, S.A.*, 432 F.3d 437 (2d Cir 2005).  Presiding over a bench trial of a defendant after accepting a plea of an accomplice or a sentencing judge having participated in plea negotiation did not rise to the level of a recusal.  *United States v. Mason*, 118 Fed. Appx. 544 (2d Cir. 2004) (unpublished opinion) & *McMahon v. Hodges*, 382 F.3d 284 (2d Cir. 2004).  Or, unfavorable remarks made during trial are deficient bases for a recusal.  *Szafran v. Sandata Tech. Inc.*, 2006 WL 3218650, at *3 (2d Cir. Nov. 16, 2006) (unpublished opinion); *Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995).  Likewise, an appellate court found totally baseless a party's motion for recusal where the district judge in a civil action had previously denied a party's *habeas* petition.  *Hughes v. City of Albany*, 189 F.3d 461 (2d Cir. 1999).

to when it is" since, which deserves repeating, "litigants are entitled to an unbiased judge, not to a

judge of their choosing." *In re Aguinda*, 241 F.3d at 201 (quoting *In re Drexel Burnham Lambert*

*Inc.*, 861 F.2d at 1312 & 1321).

Lastly, a recusal motion must be brought at the earliest possible moment after obtaining

knowledge of facts that may demonstrate the basis of the claim. *Omega Eng'r Inc. v. Omega, S.A.*,

432 F.3d 437, 448 (2d Cir. 2005) (citations omitted). There are two primary reasons for this rule:

> First, a prompt application affords the judge an opportunity to assess the merits of
> the application before taking any further steps that may be inappropriate for the
> judge to take. Second, *a prompt application avoids the risk that a party is holding*
> *back a recusal application as a fall-back position in the event of adverse rulings on*
> *pending matters*.

*LoCascio v. United States*, 473 F.3d at 497 (citations omitted) (emphasis in original).

B. Amtrak's Contentions

Amtrak asserts that this Magistrate Judge should recuse himself from adjudicating OSC's

Motion to Quash Subpoenas served upon high ranking officials in the Comptroller's Office.

Presumably, the springboard for Amtrak's Motion is this Court's January 9, 2006 Order denying its

Motion to compel Plaintiff to produce all responsive documents in the possession of the State of

New York, particularly those owning to OSC. Dkt. No. 29, Order, dated Jan. 9, 2006. Amtrak notes

that prior to this Order, during a telephone conference held on December 16, 2005, when the Court

was establishing a briefing schedule on whether such documents would be disclosed through

discovery procedure, this Judge *sua sponte* suggested that responsive documents in the possession

of OSC may be protected by deliberative process privilege and requested that this issue be briefed

as well as the other underlying issues. Dkt. No. 52-2, Def.'s Mem. of Law at p. 4. In conjunction

or concert with that *sua sponte* suggestion, this Court, by the January 9th Order, found that OSC was

an independent agency to Department of Transportation ("DOT") and was not subject to discovery

8

except by subpoena.  Dkt. No. 29 at pp. 7-16.  Believing, in part or maybe totally, that the merits for

the Ruling was based upon this Court's prior experience as General Counsel to OSC, Amtrak

appealed the Memorandum-Decision and Order.  Dkt. No. 52-2 at p. 5; *see also* Dkt. No. 30, Def.'s

Appeal, dated Jan. 26, 2006.  Within that appeal, Amtrak raised the objection that this Magistrate

Judge erred by pre-judging OSC's potential claim of deliberative process privilege based upon "his

own personal experience," and requested "at a minimum, the [District] Court should vacate the

Magistrate Judge's ruling . . . and further consider whether Magistrate Judge **should be required**

to recuse himself."  Dkt. No. 30, Point II at pp. 20-25 (emphasis added).  In concluding, Amtrak

asked the reviewing court to "vacate [the Order] in its entirety as contrary to law and issued in

violation of 28 U.S.C. § 455(a) and (b)."  *Id*. at p. 25.  Said demands for specific relief were denied

in their entirety.  Dkt. No. 35, Order, dated Apr. 4, 2006.

Now, nearly nine months after the District Court's ruling, iterating verbatim the posture it

took during its Appeal to the District Court, Amtrak claims that this Court has already pre-

determined or decided the disputed issued whether the documents they seek are "pre-decisional,"

which, if true, may be protected by the deliberative process privilege.  Dkt. No. 52-2 at p. 7.  In fact,

Amtrak found this Court to have made an "**unconscious** . . . without even realizing" decision

concerning a disputed issue.  Dkt. No. 52-2 at p. 8; Dkt. No. 30 at p. 24 (emphasis added). Amtrak

continued its remonstrations by maintaining that "[t]he fact that the Magistrate Judge made these

'rulings,' apparently without even realizing it, strongly suggests that the Magistrate Judge's own

personal experience as General Counsel to the OSC colored his decision-making and led him to

prejudge an issue that now comes before the Court on its merits in a slightly different and vastly

more important context."  Dkt. No. 52-2 at p. 8.  Not being satisfied with just claiming that this

Court acted unconsciously, Amtrak contends that the Court "acted as an advocate for OSC rather than an impartial fact finder" and "necessarily presumed that *all* information in OSC's possession is necessarily 'pre-decisional,' 'deliberative,' and protected by the deliberative executive privilege." Dkt. No. 59, Def.'s Reply Mem. of Law at pp. 2 & 3.[4]

Considering the seriousness of Amtrak's charges against this Court, which, if accurate, qualify as judicial malfeasance ("acted as an advocate" for a party), a pain-staking review of all of the facts surrounding the January 9, 2006 Memorandum-Decision and Order is not only warranted but required.

C.  Facts

Pursuant to the mandates set forth in this District Court's Local Rules, which was reinforced during the Rule 16 Conference held on December 20, 2004, Amtrak first requested court intervention on December 9, 2005, to address a looming discovery issue prior to filing any motions. Dkt. No. 23, Def.'s Lt.-Mot., dated Dec. 9, 2005. As Amtrak noted then, the parties' disagreement over the scope of discovery became apparent when Plaintiff refused to perform a search of OSC's e-mails and "produce any documents - whether electronic or hard copy - existing at the Comptroller's office." *Id*. at p. 1. Amtrak further apprehended that "there are additional letters, e-mails, analyses, work papers, and other document resid[ing] at the Comptroller's office," which may be "thousands of pages of such documents." *Id*. at pp. 1 & 2. While attaching as an exhibit of its Letter-Motion, a copy of OSC's audit of the relevant contracts and the parties performance thereto and DOT's response (Dkt. No. 23, Ex. C), and this point is critical to our discussion today, Amtrak

_____

[4] Amtrak wrote the Court "assumed that the audit letter was decisional, and the other material sought by Amtrak predecisional, without realizing that he had made a decision concerning a disputed issue . . . . These rulings strongly suggest that the Magistrate Judge's own personal experience as General Counsel to the OSC colored his decision-making." Dkt. No. 52-2 at p. 8.

asserted that "it is both relevant and important that Amtrak uncover the Comptroller's **findings and conclusions** - whether positive or negative - regarding both Amtrak's and New York's performances of their obligation[s] pursuant to their Program Agreement." *Id*. at p. 2 (emphasis added). Plaintiff was willing to produce all documents OSC sent to DOT but not any of OSC's "internal documents." *Id*. at 3.

Plaintiff staked out the position that OSC was not a party to the litigation and that indeed OSC's status was that of a third-party. In order to get records directly from OSC, since DOT did not have authority to demand such records from OSC, Plaintiff rationalized that Amtrak would have to subpoena such records. Dkt. No. 24, Pl.'s Lt.-Br., dated Dec. 14, 2005. It was Plaintiff's contention that DOT and OSC were separate and independent executive governmental agencies and not a single executive monolith. *Id*. at pp. 1 & 2. DOT was prepared to produce all of OSC's audits and additional relevant **non-privileged** documentation that was in its possession. *Id.* at p. 2 (emphasis added).[5] Based upon these disagreements over control of the documents, agency status in reference to this litigation, and which federal rule of civil procedure was applicable, a telephone conference was convened.

A telephone conference with the parties was held on December 16, 2005. During that conference and based upon the arguments being made orally and in writing, this Court noted due to the massive number of documents being sought from OSC that the parties may have to contend at some point and time with the issue of deliberative process privilege, and, therefore, *sua sponte* ordered the parties to submit a brief covering, *inter alia*, whether "some or all of the state

---

[5] Ironically, it was Amtrak who first put into issue before this Court OSC's audits. Dkt. No. 23, Ex. C. Plaintiff took umbrage that a copy of the audit, which was attached to Amtrak's December 9th Letter Motion, was presented to the Court since in its view it was "totally unrelated to the instant issue." Dkt. No. 24 at p. 2.

comptroller office's papers are subject to the executive deliberative privilege." Text Order, dated Dec. 16, 2005.[6] The parties complied and submitted, respectively, Letter-Briefs. Dkt. No. 25, Def.'s Lt.-Br., dated Dec. 23, 2005; Dkt. No. 26, Pl.'s Lt.-Br., dated Dec. 23, 2005.

Aside from the issue that discovery of OSC papers was appropriately targeted by FED. R. CIV. P. 34, Amtrak also argued that it was unfair to require it to issue subpoenas, pursuant to FED. R. CIV. P. 45, to obtain OSC's relevant, non-privileged documents. Dkt. No. 25, at p. 6. In terms of the deliberative process privilege, Amtrak argued that the issue was not ripe for decision because it had not been properly asserted. *Id.* at p. 7. For Amtrak, without a document-by-document review, any claim of the privilege was premature. *Id.* at 8. Antithetically, Plaintiff maintained its position that OSC was a separate constitutional entity in which DOT had no control over, and without a third-party subpoena, was powerless to produce all of the documents Amtrak sought. Dkt. No. 26 at pp. 1-3. In addressing the issue of deliberative process privilege, Plaintiff argued that

> a balancing of the equities would favor . . . the Comptroller because documents that constitute the predecisional and deliberative work papers of auditors are justifiably protected from disclosure to avoid the chilling impact that disclosure would have on the integrity and efficacy of the auditing process. . . Furthermore, the deliberative process privilege would apply to many communications between employees of the Comptroller's Office which refer to the audits and are pre-decisional and deliberative in nature. By broadly requesting 'additional letters, e-mails, analyses, workpapers, and other documents' other than the final audit issued by the Comptroller, without distinguishing such things as factual and statistical materials from predecisional and deliberative materials. Amtrak requests precisely those materials the deliberative privilege is intended to protect. Such communication, that were not incorporated in the final audit findings or sent to DOT, fail on their fact to bear sufficient relevance to this lawsuit to justify a judicial precedent that would severely undermine the

---

[6] As we will see later in this discussion, discovery discourse concerning the deliberative process privilege is quite prevalent in the Northern District of New York and the New York State Courts exclusively due to the fact that the Capital of New York, Albany, resides within the District, and, considering that an appreciable amount of litigation is prosecuted and defended by the State. Thus, to inquire and require parties to address the issue at the earliest stage of a discovery dispute is hardly novel or unprecedented. *See infra* Part II.A.

Comptroller's auditing process and its mandate to protect the public fisc.  The deliberative privilege would be rendered meaningless if the internal memoranda of every State agency were open to examination every time any State entity brought suit.

Dkt. No. 26 at p. 3.[7]

As previously stated, which was the crux of the January 9th Order, the Court found that OSC was a third-party to this litigation and Rule 34 disclosure was inappropriate.  Dkt. No. 29 at pp. 1-16.  Secondarily, the Court's discussion regarding the deliberative process privilege was rather brief and advisory in nature.  *Id*. at pp. 16-19.

First, since "it [was] both relevant and important that Amtrak uncover the Comptroller's findings and conclusions," we informed Amtrak that they were "not without recourse in obtaining the underlying papers, facts, conclusions of OSC in conducting the audits of DOT, Super Steel, and Amtrak [and] may possibly avail themselves of the power of subpoena."  *Id*. at p. 17; *see* Dkt. No. 23, Def.'s Lt.-Mot.  Based upon the scope of Amtrak's request for documents, and considering the uncontroverted representations that Amtrak had alreay possessed OSC's audits (*e.g.*, Dkt. No. 23, Ex. C), the Court discerned, and rightfully so, that Amtrak was seeking "all of the backup information and data, opinions, impressions and deliberations that led to the ultimate conclusions articulated in the final audit reports."  Dkt. No. 29 at p. 17 ("It is the search of this underlying information that caused this Court to raise, *sua sponte*, that OSC records may be cloaked with this privilege.").  Nonetheless, we agree with Amtrak that a ruling on this privilege as it relates to this case was premature and would not be addressed further in that it was not invoked by the head of OSC which controls the sought-after information, the documents were not identified and described,

---

[7] As further discussion will reveal, it was not the Court that plucked from the ethers either the issues or the findings regarding deliberative process privilege.  The parties framed all of the issues for the Court in their Letter-Motions and Letter-Briefs.  *See infra* Part II.A.

precise reasons were not given for the application of the privilege, and further procedural steps of a balancing test would have to be employed. *Id*. at pp. 18-19 & n.12. If it wasn't any clearer, the Court concluded that "any application of the Deliberative Process Privilege to the facts in this litigation is premature but the party should be guided by the discussion above." *Id*. at p. 19.

Amtrak appealed. The Honorable David N. Hurd, United States District Judge, considered all of Amtrak's objections to the January 9, 2006 Order. Noting the District Court's appellate responsibility  to "consider the objections made to the order and shall modify or set aside any portion of the order found to be clearly erroneous or contrary to law," found that "there [was] clearly no evidence that the magistrate judge's decision was erroneous or contrary to law . . . . Defendant's objections to the Order of the magistrate judge are DENIED, and the Order stands." Dkt. No. 35 at p. 2.

## II. DISCUSSION

### A.  January 9, 2006 Memorandum-Decision and Order

Each of Amtrak's suppositions is in extreme err, mostly out of its own ignorance on the relative frequency this Court and Northern District of New York is confronted by the issue of deliberative process privilege. The issue of deliberative process privilege is not an avant-garde legal notion drawn from the Court's exclusive experience as General Counsel to OSC or the deep recesses of a fertile unconscious but rather is a bed-rock principle of law instructed in every law school and pondered and applied regularly in this District and elsewhere. Both state and federal courts have often addressed this fundamental privilege.  Because litigation against governments and governmental agencies resound throughout this District and the state courts located within our territorial jurisdiction, the law on deliberative process privilege resonants quite vibrantly and

vividly.  Litigators in this community who litigate for and against the State of New York are keenly

aware of the deliberative process privilege's probable impact upon their case and hence are prepared

to  meet it head on.  This is a long standing privilege with an overwhelming, maybe voluminous,

body of law at both the federal and state levels.[8]  Thus the invocation of the privilege in a case much

like this is not novel but expected within this District.[9]

It is rather disingenuous for Amtrak, who has had no reservation in the past to raise the

deliberative process privilege when it believed it relevant to its case, to manufacture, without a

reasonable basis, the appearance that this Court invoked the deliberative process privilege based

solely on the Court's prior experience as General Counsel in order to prejudge what is pre-decisional

and deliberative and to act as an advocate for OSC rather than an impartial fact finder.  Take for

example the circumstance of when the law firm of Moye, O'Brien, O'Rourke, Hogan & Pickert sent

Amtrak a Freedom of Information Act (FOIA) request seeking a broad array of documents

associated with twelve routine financial audits Amtrak had performed which included with the

---

[8] Both the state and the federal government have enacted Freedom of Information Acts with statutory exemptions to protect disclosure of governmental  internal memoranda and thought process which have ignited significant and repeated court critique.  At least since 1975, the deliberative process privilege has been thoroughly and frequently discussed in both federal and New York State courts.  A word search on either Westlaw or LEXIS will generate hundreds, if not thousands of precedents applying the deliberative process privilege.  For more on the terms of the privilege's longevity, *see e.g.*, *inter alia*, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168 (1975); *Magowan v. McDermott*, 47 A.D.2d 657 (2nd Dep't 1975); *Miracle Mile Assocs. v. Yudelson*, 68 A.D.2d 176 (4th Dep't 1979); *Mothers on the Move, Inc. v. Messer*, 236 A.D.2d 408 (2nd Dep't 1997); and *Gould v. New York City Police Dep't*, 89 N.Y.2d 267, 276 (1996).

[9] For example, there are several reported cases from this District pertaining to the deliberative process privilege.  *Bath Petroleum Storage, Inc. v. Sovas*, 309 F. Supp. 2d 357 (N.D.N.Y. 2004) (Kahn, D.J.) (affirming a ruling by Magistrate Judge Treece);  *State of New York v. Oneida Indian Nation of New York*, 2001 WL 1708804 (N.D.N.Y. Nov. 9, 2001) (Treece, M.J.); *Cipolla v. County of Rensselaer*, 2001 WL 1223489 (N.D.N.Y. Oct. 10, 2001) (Homer, M.J.); *Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42 (N.D.N.Y. 1991) (Chokalis, D.J.); *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122 (N.D.N.Y. 1984) (Foley, D.J.); *Mobil Oil v. Dep't of Energy*, 520 F. Supp. 414 (N.D.N.Y. 1981) (Munson, D.J.).

request "final audit reports and associated drafts, notes, internal memoranda, and other work products." *Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1273 (11th Cir. 2004). In response, Amtrak issued a "blanket denial of the firm's FOIA request." *Id*. In support of its blanket denial, Amtrak argued with broad strokes that all documents were predecisional and deliberative, and that such "audit work papers document a collaborative, consultative process leading to a final audit decision, and therefore, f[e]ll squarely within the protection of the deliberative process privilege." *Id*. at 1275. In the final analysis, the Circuit Court upheld Amtrak's interpretation of the documents and the law, and overturned the district court's ruling that the work papers and internal memoranda were not protected.

Similarly, in a false arrest suit brought by Otterson against Amtrak, Otterson sought through discovery certain investigative records pertaining to his arrest. Amtrak raised at the earliest instance and rather broadly the deliberative process privilege again. *Otterson v. Nat'l R.R. Passenger Corp.*, 228 F.R.D. 205, 206-09 (S.D.N.Y. 2005). *A fortiori*, Amtrak is no stranger to the deliberative process privilege. Thus, when considering Amtrak's inimitable interlock with the deliberative process privilege, it is reasonable to conclude that Amtrak's familiarity with the underlying principle of the doctrine caused it to overanalyze syntactically this Court's Ruling as a prejudgment construct of what may be considered predecisional and deliberative and thus, it is Amtrak who prejudged the significance of the advisory opinion, rather than what a fair reading of the text of the Memorandum-Decision and Order would connote. It would also be reasonable to presume, as the Second Circuit has forecasted, that judges must be alert to avoid the possibility that those who would question their impartiality are in fact seeking to avoid the consequence of an expected adverse decision, not based upon a court's previous rulings but on their own unique engagement with a

16

particular aspect of the law.

What the record presents, as attested by the factual discussion above, is that it was the parties who framed the discussion of the deliberative process privilege when seeking court intervention. It is uncontroverted that Amtrak wanted all of OSC's documents - whether electronic or hard copy - that may include **analyses**, work papers, and other documents to uncover the findings and conclusions of the Comptroller's performance audits.  Dkt. No. 25, Def.'s Lt.-Mem. at p. 8 ("New York should be required to produce all documents created and held by the Comptroller.");[10] *see also supra* Part I.C & note 4.  Plaintiff DOT was prepared to share with Amtrak all of the non-privileged OSC documents it had in its possession, making clear that it did not possess OSC's internal memoranda, work papers and the like.  It was further represented that OSC's audit reports had already been shared with Amtrak.  Dkt. No. 23, Ex. C.  By Amtrak's own words and expressed intention, it wanted everything to uncover OSC's conclusions.  Unconsciously, maybe, Amtrak telegraphed the legal issues at hand and based upon Amtrak's description of the information it sought gave the unassailable appearance that the information may be deliberative.  Amtrak's actions and desires are the talisman for the deliberative process privilege.  It is not mysterious, in fact it is reasonable to conclude, that if a party already has the final audit report and still seeks all other documents from that party it is, in essence, looking for the underlying or supporting papers.  Yet, without legal briefs on whether Rule 34 discovery was applicable here, it was unknown then whether

---

[10]  We also draw attention to Amtrak's letter, dated December 1, 2005, attached to Amtrak's Letter-Motion. Dkt. No. 23, Lt.-Mot., dated Dec. 9, 2005, Ex. B.  Amtrak's letter to Plaintiff's counsel states, "apart from the fact that there are many more letters, emails, and other communication beyond those above, there will be analyses, workpapers, notes, etc., underlying the Comptroller's audit and report." *Id.*  If there was any doubt about the comprehensive nature of Amtrak's demands for any and all documents, we need not turn any further than to its reference to "etc."  Etcetera, by any other definition, is all encompassing and is synonymous with extras, other things, and so forth.

DOT would have to produce these documents and if they did what corresponding issues would they raise. Hence it was readily apparent that at some juncture in this litigation, the Court would have to concern itself with the deliberative process privilege and it was prudent for the parties to comprehensively address the issue at the earliest moment of the litigation rather than *seriatim*, which would inextricably exhaust judicial efficiency in managing this litigation.

To ask the parties to brief the issue in December 2005 was not a daring request since courts, exercising their inherent discretion and authority, have asked these types of questions and framed the issues in many cases like this in order to determine matters in contention and to expedite a resolution accordingly. No party would be served by a string of *seriatim* rulings when a single comprehensive ruling would suffice. The deliberative process privilege was a central legal proposition then as it is fundamentally now since OSC has moved to quash the subpoenas based chiefly upon the doctrine. Dkt. No. 50, Mot. to Quash. When asking for the deliberative process privilege to be briefed, with an eye toward judicial economy and an attempt to avoid a superficial analysis of all of the inextricable issues, this Court wanted all issues and facts to be presented so that a *sui generis* comprehensive order could be issued, if possible. More importantly, however, having the parties brief this doctrine and provide an analysis of the law, the Court was apprised that without further data from the governmental agency head specifically identifying the document and the asserted privilege, further analysis would be premature. The Court agreed with Amtrak's analysis and further notified Amtrak that its claim that the deliberative process privilege was waived was also premature. Dkt. No. 29 at pp. 18, 19, & n. 12 & 13.

In the January 9th Order, the court advised Amtrak that they may be able to resort to subpoenas in order to gather up the data and documents they so feverishly sought. However, and

it was plainly obvious that the deliberative process privilege would be invoked nonetheless, the Court, *in dicta*, informed the parties of the relative parameters of the law as a guidepost to their further quest, and nothing more.  Dkt. No. 29 at p. 19 ("[T]he party should be guided by the discussion above.").  There was no blanket findings issued.  Nowhere within the four corners of the Order was there a determination of what constituted predecisional or deliberative, nor was the deliberative process privilege enforced or imposed because clearly none could be made since, as astutely noted by Amtrak, no one invoked the privilege, no documents were set before the Court to determine its characteristic, and the appropriate balancing test could not be applied.  *Id*. at pp. 17-19.  The issue was not ripe and we agreed, and yet no reasonable person would conclude that the issue would not be revisited upon the Court.  Eventually, as what has occurred, the issue would be ripe for a judicial or negotiated resolution.[11]  *Id*. at pp. 18-19 ("Hence, we will not, at this juncture address this privilege.").  The Order does nothing more "than  observe, without deciding, the obvious fact that Amtrak's request for discovery from OSC might encompass deliberative documents."  Dkt. No. 59, Pl.'s Mem. of Law at p. 4.  To alert the parties to the paramount issues in the case is a court's fundamental obligation to ensure such linchpin issues do not go unheeded or discussed.  We would be remiss if we allowed the parties to avoid or postpone the discussion of a controlling principle of law.  To criticize otherwise is nothing short of sophistry.

---

[11] Without the actual documents or a description thereof, courts would be reticent in casting them as predecisional and/or deliberative.  Yet in order for an analysis of the deliberative process privilege to ensue, or even qualifying for such a privilege, it is axiomatic that there must be a discourse on what is predecisional and deliberative.  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999); *Otterson v. Nat'l R.R. Passenger Corp.*, 228 F.R.D. 205, 207 (S.D.N.Y. 2005); *Schiller v. City of New York*, 2007 WL 136149, at *8 (S.D.N.Y. Jan. 19, 2007).  To ignore that such an analysis would be forthcoming, and to castigate the Court's advisory discussion of such issues as some form of advocacy on behalf of a third-party, is dubious, maybe incredulous.

Amtrak clings to a vapid notion, without any objective factual basis, that this Court, after leaving OSC more than five years ago, still harbors an allegiance to the state agency to such a degree that we would abandon any sense of judicial responsibility and impartiality. *See* Dkt. No. 59, Pl.'s Mem. of Law at p. 6. As we previously noted, a judge's prior representation of a party does not automatically warrant disqualification. Such "unconscious" fealty, as Amtrak would suggest, is remote, contingent, and speculative. Amtrak cannot show any personal bias, personal or fiduciary outcome, or contemporaneous extrajudicial contact with the agency, which may show a palpable objective reason for disqualification. Since the Court had not personally participated in any review of the contracts or audits or gave advice to OSC while such reviews occurred, there are no facts that show a high degree of favoritism or unequivocal antagonism. *Baker & Hostetler LLP v. United States Dep't of Commerce*, 471 F.3d 1355 (D.C. Cir. 2006); *see also* 28 U.S.C. § 455(b)(2) & (3). The only knowledge of the contracts and the related audits come from presiding over this action, and if any opinion about Amtrak's discovery was formed, it was properly within the context of this case. *Liteky v. United States*, 510 U.S. 540, 551 (1994); *United States v. Thompson*, 76 F.3d 442, 450 (2d Cir. 1996) (finding that current Senior District Court Judge Frederick Scullin, who served as United States Attorney, was not considered counsel as to the investigation that lead to Thompson's indictment and thus not disqualified).

The facts in this case are not dissimilar to those facts that confronted Current Senior District Court Judge Thomas J. McAvoy when he was charged with bias because of his erstwhile personal and professional relationship with the victims of a criminal defendant who was before him. The Second Circuit accepted Judge McAvoy's representation that his relationship with the family that was victimized "drifted away and ceased" seven years prior to the trial and concluded that there was

20

no reasonable basis for him to disqualify himself.  *United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992).

B.  January 9, 2006 Order's footnote 11

When the Court requested Letter-Briefs on the Rule 34 discovery issue, neither party presented any sworn statements, and in the absence of said sworn statements, sometimes made categorical statements without any basis in fact.  A prime example is Amtrak's rhetorical commentary on whether the DOT presented authority to support its claim that it did not have authority to demand records from OSC which fell short for the very same accusatory reasons. Amtrak asked then answered, "can the State, acting through its attorney general's office, obtain documents from the Comptroller's office . . . . The answer is, obviously, 'yes.'" Dkt. No. 25 at p. 5.  Such rhetoric did not meet Amtrak's burden of establishing control over the documents being sought.  Dkt. No. 29 at p. 16.  As a commentary of its own, having no bearing on the ruling, the Court noted in footnote 11 that Amtrak could have but failed to raise the argument that the State did not provide sworn proof to support its position, however, such would not be necessary at that time since the Court had personal knowledge that "neither DOT nor the Attorney General have access to OSC's documents without OSC's permission or the employment of a subpoena." *Id*.  We noted that the personal knowledge was gleaned from its previous role as General Counsel, however, therse are facts that are generally known within New York state government and this District and are capable of accurate confirmation by other extrinsic sources.  If indeed this was an extrajudicial source, it does not necessarily follow that there is any bias or prejudice.  The Supreme Court made it evidently clear that "some opinions acquired outside the context of a judicial proceeding" are not "sufficient conditions for bias or prejudice recusal." *Liteky v. United States*, 510 U.S. at 554-55.

This Court's knowledge and statements are very much akin to District Court Judge John S. Martin, Jr.'s comments in *Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995).

Groden brought an action against the publisher and others for including his picture and a quote attributable to him in an advertisement for another author. Groden's and the other author's books dealt with the assassination of President John F. Kennedy but departed as to the nature of the assassination. The defendant author's book was an attempt to refute conspiracy theories. Groden argued that District Judge Martin should have disqualified himself when he included in his August 22, 1994 opinion, that

> [t]he proliferation of theories about the Kennedy assassination is proof that there is no universally accepted factual answer to the question, 'Who killed President Kennedy . . . . [T]he known evidence concerning the Kennedy assassination and the extensive debate over the Warren Commission's findings demonstrate that the actual facts will never be verifiable to everybody's satisfaction.

*Id*. at 1053 (quotation marks omitted).

The Second Circuit noted that these comments did not demonstrate a bias and were "comments [that] represent[ed] appropriate observations about the context in which this case arises." *Id*. Groden had failed to show that Judge Martin was "influenced by a bias originating in some extrajudicial source" or had "developed any predisposition . . . sufficient to require his recusal." *Id*. Lastly, the Second Circuit noted, "to warrant disqualification, opinions formed by a judge must display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. (internal quotation and citations omitted).

Our commentary was similarly made in the context of the case before us with *demini*s, if any, effect. Said commentary does not reflect any bias, predisposition nor portends any deep-seated favoritism or antagonism.

Accordingly, the Motion to Recuse will be denied for the reasons stated above.

22

C.  General Counsel of OSC

In reviewing the Motion to Quash the Subpoenas, new information was presented to the Court that may invoke 28 U.S.C. § 455(a).  In addition to this new information, pursuant to this Court's direction, OSC has submitted additional affidavits detailing this Court's tenure as General Counsel to OSC and the dates and times when the DOT and Amtrak contracts were reviewed and approved by OSC.  Dkt. No. 73, Jacquelyn J. Hawkins Aff., dated Feb. 20, 2007, Joan M. Sullivan Aff., dated Feb. 20, 2007.   These Contracts and Supplement Agreements are the basis of Plaintiff's lawsuit against Amtrak.  This Court served as General Counsel from February 25, 1999 to August 20, 2001.  Hawkins Aff.  It appears that DOT submitted DOT and Amtrak's High Speed Rail Contract to OSC on or about April 21, 2000, gaining OSC's approval on July 19, 2000, and the Supplemental Contract on or about August 30, 2000, which was approved on September 6, 2000. Sullivan Aff.  Evidently, approval of the Contract and Supplement Contract occurred while I served as General Counsel, and OSC's Division of Law, which I headed, may have played a role in approving said Contracts.  On occasion, when proposed contracts present complicated issues of law, the OSC's contract unit may ask the Division of Law to assist in the review.

This Court has no recollection of these Contracts being reviewed by OSC or even the Division of Law.  This Court is certain that he did not play a personal role in the OSC's review.  All of the related audits were clearly performed after I had left OSC.

As stated above, since this Court had not personally participated in any review of the Contracts or audits or gave advice to OSC while such reviews occurred, and the only knowledge of these matters was garnered through this lawsuit, which was commenced three years after I left OSC, there are no facts that show a high degree of favoritism or unequivocal antagonism.  *Baker &*

23

*Hostetler LLP v. United States Dep't of Comm'n*, 471 F.3d 1355 (C.A.D.C. 2006); *see also* 28

U.S.C. § 455(b)(2) & (3); *Liteky v. United States*, 510 U.S. 540; *United States v. Thompson*, 76 F.3d

442; *United States v. Lovaglia*, 954 F.2d 811.

For these reasons, the Motion to Recuse is denied.

### D.  Law of the Case

Immediately after the January 9th Memorandum-Decision and Order, Amtrak filed objections

with the District Judge Hurd.  Dkt. No. 30, Def.'s Appeal; *see also* Part I.B & C.  The current

Motion to Recuse is literally verbatim of those objections Amtrak submitted to the District Judge.

Dkt. No. 30 at pp. 22-24.  Amtrak asked Judge Hurd, "at a mininum, [to] vacate the Magistrate

Judge's ruling as to deliberative process privilege in its entirety . . .[and] further consider whether,

on remand, the Magistrate Judge should be required to recuse himself."  *Id.* at p. 24.  In weighing

Amtrak's objections, Judge Hurd wrote that he "shall consider the objections made to the order and

shall modify or set aside any portion of the order found to be clearly erroneous or contrary to the

law." Dkt. No. 35, Order, dated Mar. 31, 2006, at p. 2.  Judge Hurd concluded that, "[h]ere, there

is clearly no evidence that the magistrate judge's decision was erroneous or contrary to law."  *Id.*

 The implication of Judge Hurd's Order on the issue of recusal was dispositive.

The law of the case doctrine is a seminal principle of law.  Essentially, under this doctrine,

any decision made on an issue of law made at one stage of a case becomes a binding precedent to

be followed throughout the litigation.  "[T]he doctrine posits that when a court decides upon a rule

of law, that decision should continue to govern the same issues in subsequent stages in the same

case." *In re PCH Assoc*, 949 F.2d 585, 592 (2d Cir. 1991) (citations omitted).  "While the doctrine

is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits

between the same parties." *Id*. (citations omitted).

The underlying considerations for this doctrine are obvious: to maintain fairness to the parties; to maintain consistency throughout the litigation; to avoid reconsideration of matters once decided during the course of the litigation; and to promote judicial economy and societal interest in finality. *Prisco v. A & D Cartin Corp.*, 168 F.3d 593 (2d Cir. 1999); *Soto-Lopez v. NYC Civil Serv. Comm'n*, 840 F.2d 162 (2d Cir. 1998) (a litigant should not be allowed to disregard this doctrine to prejudice the party seeking the benefit of the doctrine); *see also County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

The law of the case doctrine has "two subsidiary rules" with one commonly referred to as the mandate rule. *United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001).

> The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (emphasis added); *see also United Stats v. Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000). Likewise, where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so. *See United States v. Stanley*, 54 F.3d 103, 107 (2d Cir.1995) (citing *Bell*, 5 F.3d at 66, for proposition that " 'the [mandate] rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived' "); *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir.1991); *see also United States v. Webb*, 98 F.3d 585, 587 (10th Cir.1996) (discussing circumstances when departure from mandate rule may be warranted).

*Id*. at 95 (quotation and alterations in original); *United States v. Thorn*, 446 F.3d 378, 386 (2d Cir. 2006); *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002).

Just as it "would be absurd" to permit a party to argue a point he chose not to on his appeal, it would be equally absurd to allow a party who chose to argue a point, which was ultimately decided against him, to be permitted another opportunity to pursue it again upon remand. *United States v. Quintieri*, 306 F.3d at 1229.   In fact, an inferior court should not consider the question which had been laid

to rest by the appellate court. *Oneida Indian Nation of New York v. County of Oneida*, 214 F.R.D. 83, 92 (N.D.N.Y. 2003). "In other words, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)); *Orafan v. Goord*, 2003 WL 21972735, at *4 (N.D.N.Y. Aug. 11, 2003) (quoting *United States v. Cirami*, 563 F.2d 26, 32-33 (2d Cir. 1977) for the proposition that "[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue").

In terms of this Motion to Recuse, a disinterested objective observer, District Judge Hurd, after reviewing all of the underlying facts and the law, expressly denied, *inter alia*, Amtrak's request to vacate the January 9th Order based upon purported bias and prejudice. Judge Hurd rejected the very same arguments renewed in this Motion and clearly found that this Court acted appropriately within the law. For the sake of judicial economy, law of the case is applicable and the Motion to Recuse will be denied on this account.

### III. CONCLUSION

For the reasons stated above, we find that an objectively disinterested reasonable observer fully informed of the underlying facts would entertain significant doubt that this Court acted with a deep-seated favoritism for OSC or unequivocal antagonism toward Amtrak. On that basis, Amtrak's Motion to Recuse shall be **denied**. Lastly, we note that essentially the only discovery remaining in this case are the exchange of expert reports and the third-party subpoena issue.

Accordingly, it is hereby

**ORDERED**, that Amtrak's Motion to Recuse (Dkt. No. 52) is **denied**.

**IT IS SO ORDERED**.

Albany, New York
February 23, 2007

RANDOLPH F. TREECE
United States Magistrate Judge

27