**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

STATE OF NEW YORK, by and through
Joseph H. Boardman, as Commissioner of
the New York State Department of
Transportation; and NEW YORK STATE
DEPARTMENT OF TRANSPORTATION,

                    Plaintiffs,           No. 04-CV-962
                                                      (DNH/RFT)

        v.

NATIONAL RAILROAD PASSENGER
CORPORATION, doing business as
Amtrack,

                    Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HON. ANDREW M. CUOMO<br>Attorney General for the<br>   State of New York<br>Attorney for Plaintiffs<br>The Capitol<br>Albany, New York 12224-0341 | EDWARD M. SCHER, ESQ.<br>Assistant Attorney General |
| ARENT FOX PLLC<br>Attorney for Defendant<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-5339 | MARK R. DENICORE, ESQ.<br>RALPH G. BRABHAM, ESQ.<br>RICHARD J. WEBBER, ESQ.<br>TIMOTHY F. BROWN, ESQ.<br>MARY JOANNE DOWD, ESQ. |
| HON. ANDREW M. CUOMO<br>Attorney General for the<br>   State of New York<br>Attorney for Non-Party Movant Office of the<br>   New York State Comptroller<br>120 Broadway, 24th Floor<br>New York, New York 10271-0332 | MICHAEL R. KLEKMAN, ESQ.<br>Assistant Attorney General |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION AND ORDER**

Presently pending is the motion of non-party Office of the New York State Comptroller ("OSC") for an order pursuant to Fed. R. Civ. P. 45 quashing subpoenas for the depositions of former acting Comptroller Tom Sanzillo ("Sanzillo"), Assistant Comptroller Joan Sullivan ("Sullivan"), and former Comptroller Alan Hevesi ("Hevesi"). Docket No. 50. Defendant National Railroad Passenger Corporation ("Amtrak") opposes the motion. Docket No. 63. For the reasons which follow, the motion is granted in part and denied in part.

**I. Background**

The facts of this case are set forth in the order of United States Magistrate Judge Randolph F. Treece filed January 9, 2006, familiarity with which is assumed. See New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 261-62 (N.D.N.Y. 2006) (Docket No. 29) ("Order").

As is relevant to the pending motion, Amtrak previously sought production of certain documents from OSC through the service of discovery demands on plaintiff. OSC failed to comply, and Amtrak moved to compel disclosure. Docket No. 23. The motion was denied on the ground that OSC was not a party to this action. Order at 11; New York ex rel. Boardman, 233 F.R.D. at 270. Amtrak appealed and the Order was affirmed by the

district court. Docket No. 35. Amtrak then issued the deposition subpoenas at issue herein for Sullivan, Sanzillo, and Hevesi, who filed the instant motion to quash.[1]

## II. Discussion

OSC requests an order quashing the subpoenas on the grounds that (1) Sanzillo and Hevesi are immune from being deposed because they are and were high-ranking government officials; (2) Sanzillo, Sullivan, and Hevesi are protected from being deposed by the deliberative process, mental process, and attorney client privileges; and (3) the depositions would be unduly burdensome.

### A. Legal Standard

"While the court interprets liberally the discovery provisions of the Federal Rules of Civil Procedure . . . limits do exist." Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Fed. R. Civ. P. 45 requires that, upon "timely motion, the court by which a subpoena was issued shall quash . . . the subpoena if it . . . requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45 (3)(A)(iii) & (iv). If a motion to quash a subpoena is made, "[t]he burden of persuasion . . . is borne by the movant." Travelers Indem. Co., 228 F.R.D. at 113 (citations omitted).

---

[1] The above-captioned case is assigned to Judge Trece. The instant motion was referred to the undersigned for decision in light of Judge Treece's prior employmnet as OSC General Counsel. Docket No. 83.

**B. High-Ranking Official**

Generally speaking, "high ranking government officials are not subject to depositions." Marisol A. v. Giuliani, No. 95-CV-10533 (RJW), 1998 WL 132810 at *2 (S.D.N.Y. Mar. 23, 1998) (citations omitted).  The classification of who constitutes a protected high-level government official is based upon the facts and context of the particular case, is "a matter of degree of importance," and is applied only to those individuals "consumed daily with matters of statewide . . . relevance . . . [such as] the operation of state government and the formulation of state policy." New York v. Oneida Indian Nation of N.Y., No. 95-CV-0554 (LEK/RFT), 2001 WL 1708804 at *3,4 (N.D.N.Y. Nov. 9, 2001).  Individuals in such positions are afforded limited protection.  Thus, "[d]epositions of high-level governmental officials are permitted . . . [if]: (1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his or her governmental duties." (citations omitted). Id. at 3.  Therefore, applying the high-ranking official protection is inappropriate if "a . . . government official . . . has unique personal knowledge that cannot be obtained elsewhere." Marisol A., 1998 WL 132810, at *3.

In this case, Sanzillo and Hevesi are protected from being deposed.  First, both qualify as high-ranking government officials.  While acting as Comptroller, Sanzillo and Hevesi were "New York State's chief fiscal officer," with duties including inter alia "managing the State's assets . . . , conducting management and financial audits of State agencies . . . , issuing reports on State finances . . . , [and] reviewing State contracts, payrolls and payments before they are issued . . . ." New York State Office of the State

4

<u>Comptroller - What are the Comptroller's Responsibilities?</u> (visited Dec. 11, 2007) <http://nysosc3.osc.state.ny.us/about/response.htm>. Additionally, while serving as First Deputy Comptroller, Sanzillo was the chief aide to the Comptroller, providing critical assistance in policy implementation and program direction. Thus, the responsibilities of Sanzillo and Hevesi fit squarely within the criteria for duties pertaining to statewide relevance, the operation of state government, and the formulation of policy.

Second, Sanzillo and Hevesi do not possess unique personal knowledge that cannot be obtained from other sources. Sanzillo states that "[d]ue to [his] other responsibilities . . . , it [was] impossible . . . to involve [him]self in every detail of the contract review/appeal process. Rather, [he] delegate[d] such process to Ms. Sullivan, who ke[pt him] apprised of the relevant issues at a more strategic/policy level." Sanzillo Aff. (Docket No. 50, attachment 8) at ¶ 6. Furthermore, it appears that any deliberations that Sanzillo attended were also attended by Sullivan or resulted in a published report which is publicly accessible. Sullivan Aff. (Docket No. 50, attachment 2) at ¶¶ 13, 16, 18-25; Sanzillo Aff. at ¶ 23. Therefore, OSC has demonstrated that Sanzillo and Hevesi do not possess unique personal information because the information Amtrak seeks may be discovered through a deposition of Sullivan or from the published materials and correspondence already produced. Moreover, although Hevesi did not submit an affidavit, Sanzillo stated that he was "under the belief that there is nothing [Comptroller Hevesi] could possibly add to this discussion that is not covered by my Affidavit." Sanzillo Aff. at ¶ 35. Thus, the same reasons which cloak Sanzillo with high-ranking government official protection also apply to Hevesi.

Therefore, OSC's motion on this ground is granted.

**C. Privileges**

"The deliberative process privilege . . . protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." Marisol A., 1998 WL 132810 at *6 (citations omitted); see e.g., Hopkins v. United States Dep't of Hous. & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991). The privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002) (citations omitted). The reason underlying the privilege is "that officials will not communicate candidly among themselves if each remark is a potential item of discovery . . . [thus, the privilege] protect[s] open and frank discussion among those who make [agency decisions] within the Government." Id. (internal citations omitted).

To invoke the deliberative process privilege, there must be a communication that is "(1) . . . inter-agency or intra-agency . . . (2) predecisional; and (3) deliberative." Id. at 77 (citations omitted); see e.g., Marisol A., 1998 WL 132810 at *6. "A [communication] is predecisional when it is prepared in order to assist an agency decisionmaker in arriving at his decision." Tigue, 312 F.3d at 80 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks and citations omitted). This includes "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer. . . ." Id. However, it does not include "opinions or conclusions of those not part of that process. . . . underlying factual documents that are relied on in the decisionmaking process . . . , statements that summarize facts . . . , documents that describe an agency's policy after it has been

adopted, or . . . pre-decisional documents that are incorporated into the agency's final decision." United States v. Hooker Chem. & Plastics Corp., 123 F.R.D. 3, 15 (W.D.N.Y. 1998).

In this case, the subject matter about which Amtrak seeks to inquire is not privileged. Information regarding the factual basis upon which the decisions whether to approve contract amendments were made does not constitute predecisional material. Although Amtrak may impermissibly inquire at a deposition of Sullivan into privileged internal OSC deliberations, "a deposition cannot be barred simply because a deponent may be asked about privileged information." Marisol A., 1998 WL 132810 at *7; see also Sanstrom v. Rosa, No. 93-CV-7146 (RLC), 1996 WL 469589 at *5 (S.D.N.Y. Aug. 16, 1996) (reserving the right to rule on objections made at the deposition because "the mere fact that a witness may be asked questions that seek to elicit privileged matter does not provide a colorable basis for precluding the entire deposition"). Thus, on this record it appears that Sullivan possesses information relevant to the matters at issue in this case. The fact that a substantial portion of that information may be protected from disclosure by privileges does not afford OSC a basis to preclude her deposition entirely as Amtrak remains entitled to discover whatever non-privileged information Sullivan possesses.

Accordingly, the motion of OSC to quash the subpoena for the deposition of Sullivan on this ground is denied without prejudice to renewal during the deposition of Sullivan to Amtrak's questions as they are asked.[2] The undersigned retains jurisdiction over the Sullivan deposition, which shall take place in the James T. Foley U.S.

---

[2] The same rationale applies to the mental process and attorney-client privileges asserted by OSC. Therefore, OSC retains the right to object on the grounds of these privileges during Sullivan's deposition.

7

Courthouse, Albany, New York at a date and time to be arranged among plaintiffs, Amtrak, OSC, and the chambers of the undersigned and to be conducted under the supervision of the undersigned.

**D. Undue Burden**

To determine whether a subpoena poses an undue burden, there must be a balancing between "'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Tigue, 312 F.3d at 80 (quoting Travelers Indem. Co., 228 F.R.D. at 113 (citations omitted)). However, there is special weight afforded to "the burden on non-parties [to] produc[e] documents to parties involved in litigation." Travelers Indem. Co., 228 F.R.D. at 113 (citations omitted) (holding that, even in light of the special weight, "the sheer volume of documents would be no reason, in and of itself, to quash the subpoenas if there were no other reasonable way for [defendant] to obtain the information it seeks").

In this case, Amtrak is seeking to depose a third party; thus, special consideration must be given to the burdens imposed upon OSC. The subpoena to Sullivan is for testimony only. The burden to OSC, therefore, is loss of Sullivan's services on other matters while she is preparing for and giving her deposition. Given OSC's substantial involvement in the matters at issue here, this burden does not rise to the level of significant. Moreover, the information that Amtrak seeks pertains to facts required to support four of the fifteen affirmative defenses it asserts against plaintiffs. Thus, the deposition concerns highly relevant material necessary for proper litigation. Although OSC contends that any information Amtrak may request can be discovered within the previously

8

obtained discovery material and audits, the audits were not referenced as the factual basis for the contract amendment decisions. The need for assurances which OSC demanded from plaintiffs and Amtrak stemmed from vague concerns about delays and cost overruns. See Docket No. 50, attachments 5 & 6.

Thus, without the ability to depose Sullivan, it is not reasonable to assume that Amtrak may obtain sufficient information to assert its affirmative defenses and defend against the alleged actions which caused plaintiffs and OSC concern. Moreover, it is acknowledged that OSC reviews a multitude of contracts and amendments. See Sullivan Aff. ¶ 3 (stating that "[i]n [the] fiscal year ending March 31, 2006, [OSC] reviewed approximately 44,000 State contracts, contract amendments and purchase orders . . . ."). However, the sheer volume of contracts that pass through the agency for consideration are not, in and of themselves, sufficient reason to quash the subpoenas given that Amtrak is unable to obtain the proper factual information otherwise needed to litigate the case.

Therefore, OSC's motion on this ground is denied.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that OSC's motion for an order quashing the subpoenas for the deposition of Sanzillo, Sullivan, and Hevesi (Docket No. 50) is:

    1. **GRANTED** as to the subpoenas to Sanzillo and Hevesi, and those subpoenas are **QUASHED**; and

    2. **DENIED** without prejudice as to the subpoena to Sullivan as to which:

        A. The undersigned retains jurisdiction to supervise the deposition; and

B. Such deposition shall take place in the James T. Foley U.S. Courthouse, Albany, New York at a date and time to be arranged among plaintiffs, Amtrak, OSC, and the chambers of the undersigned and to be conducted under the supervision of the undersigned.

**IT IS SO ORDERED.**

DATE:  December 12, 2007
        Albany, New York

                                                  _David R. Homer_
                                                  United States Magistrate Judge